60.6372

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>MACON CONSTRUCTION GROUP, INC., and<br>3604 NORTH CAMPBELL AVENUE, LLC,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:26-cv-11762 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES the plaintiff, WESTFIELD INSURANCE COMPANY ("Westfield"), by and through its attorneys, Joseph P. Postel and Thomas J. A. Weller of Lindsay, Pickett, & Postel, LLC, and hereby states its complaint for declaratory judgment (pursuant to the Declaratory Judgment Act, 28 U.S.C. 2201 *et seq*.) against the defendants, MACON CONSTRUCTION GROUP, INC. ("Macon") and 3604 NORTH CAMPBELL AVENUE, LLC ("Campbell").

**Introduction**

1. Westfield seeks a declaration that it does not owe a duty to defend or indemnify Macon under five commercial package policies issued by Westfield to its named insured, Mid-States Concrete Industries, LLC ("Mid-States") with respect to an arbitration demand and request for mediation styled as *3604 North Campbell Avenue, LLC v. Macon Construction Group, Inc.*, filed with the American Arbitration Association (the "arbitration claim"). The arbitration claim alleges various construction defects relating to a construction project for which Macon was the general contractor. Mid-States performed work for Macon on this construction project as a sub-contractor. The Westfield policies provide no coverage

to Macon as an additional insured because the arbitration claim does not fall within the policies' additional insured coverage. Specifically, Campbell's statement of claim does not allege property damage arising out of Mid-States' work described in the subcontractor agreement between Macon and Mid-States.

**The Parties**

2. Westfield Insurance Company is an Ohio corporation organized under the laws of Ohio, with its principal place of business in Westfield Center, Ohio. Westfield is a citizen of Ohio.

3. Defendant Macon Construction Group, Inc. is an Illinois corporation, with its principal place of business in Chicago, Illinois. Macon is a citizen of Illinois.

4. Defendant 3604 North Campbell Avenue, LLC is a limited liability company organized under the laws of Illinois, with its principal place of business in Cook County, Illinois. Upon information and belief, Campbell's two members and managers are Michael Slaven and Peter Slaven. Upon information and belief, Michael Slaven is a resident of Winnetka, Illinois and is an Illinois citizen. Upon information and belief, Peter Slaven is a resident of Chicago, Illinois and is an Illinois citizen.

5. Campbell is a "necessary party" to this action under applicable state law and may therefore be a "required party" under FRCP 19, in that it may have an interest in the subject matter of this action. Westfield seeks no relief from Campbell, other than to the extent, if any, that it is interested in the subject matter of this action, that it be bound by the judgment sought herein. If Campbell, by a duly authorized representative, will sign a stipulation to that effect, then Westfield would be willing to voluntarily dismiss it as a defendant.

## Jurisdiction and Venue

6. The jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to this claim occurred in this district.

## The Arbitration Claim

8. On March 31, 2026, Campbell sent Macon a demand for arbitration and a request for mediation under the American Arbitration Association. A true and correct copy of Campbell's statement of claim is attached hereto as **Exhibit A**.

9. The statement of claim alleges that Campbell is the owner and developer for a twelve-unit luxury apartment complex located at 3604 North Campbell Ave., Chicago, Illinois 60618 (the "Property"). **Ex. A**, ¶ 2.

10. The statement of claim alleges that on May 4, 2021, Campbell and Macon entered into an agreement under which Macon agreed to act as the general contractor for the construction project to build the Property. **Ex. A**, ¶ 6.

11. The statement of claim alleges that Macon hired various subcontractors to perform the construction project's work, including SM Masonry Walls Construction to perform all masonry-related work and installation at the Property. **Ex. A**, ¶ 15.

12. The statement of claim alleges that in early April 2022, Campbell received a report of a window leak from a tenant. **Ex. A**, ¶ 25.

13. The statement of claim alleges that further inspection revealed construction defects relating to the windows and surrounding flashing, sealants and awning mechanisms, resulting in air and water infiltration into the Property. **Ex. A**, ¶¶ 26-32.

14. The statement of claim alleges that following this incident, Macon issued its Certificate of Substantial Completion for the project on April 15, 2022. **Ex. A**, ¶¶ 21, 30.

15. The statement of claim alleges that in July 2025, Campbell received a tenant complaint regarding heavy condensation appearing at the bottom of two windowsills in her unit. **Ex. A**, ¶ 33.

16. The statement of claim alleges that further investigation revealed numerous defects in the Property's construction relating to windows, flashing, drainage, and roofing. **Ex. A**, ¶¶ 34-49.

17. In a section titled "Garage Defects," the statement of claim alleges the following defects in the Property's garage:

> 50. The Project has an attached parking structure.
>
> 51. The Architect's drawings required that [Macon] bolt the non-bearing edges of precast planks to concrete-masonry unit bond beams when constructing the garage.
>
> 52. [Macon] did not comply with the Architect's drawings and failed to adequately reinforce the structural brick wall bond beams and bolt the precast planks properly. Due to this issue, masonry in the garage exhibits signs of distress.
>
> 53. Further, the structural-brick flashings were discontinuous, resulting in water infiltration in the garage. **Ex. A**, ¶¶ 50-53.

18. The statement of claim alleges claims for breach of contract, breach of express warranties, breach of implied warranty of workmanship, promissory estoppel, and unjust enrichment. **Ex. A**, ¶¶ 61-109.

**Macon's Tender to Westfield and Subcontractor Agreement**

19. On March 17, 2026, Macon tendered its defense and indemnity for Campbell's claim to Mid-States and Westfield pursuant to a June 7, 2021, subcontractor agreement between Macon and Mid-States relating to construction work performed at the Property. A true and correct copy of the subcontractor agreement is attached hereto as **Exhibit B**.

20. Article 1 of the subcontractor agreement sets forth Mid-States' scope of work for the 3604 Campbell construction project. **Ex. B.**

21. Within the agreement, "Subcontractor" refers to Mid-States and "Builder" refers to Macon. The subcontractor agreement provides, in pertinent part, as follows:

> **Exhibit D – Insurance and Warranty Provision**
> ***
> Subcontractor also agrees to supply Builder with a current Certificate of Insurance verifying the following:***
>
> - 3604 North Campbell Avenue, LLC, Lakeside Bank, UIC/Near West and Macon Construction Group, Inc., as identified in Article 1 of this agreement, must be added as additional insured under all liability policies, with reference to the project location as indicated under the Insurance Coverage Limits and Certificate Requirements listed below:
>
> **Commercial General Liability Bodily Injury & Property Damage – Limits**
>
> - $2,000,000 Each Occurrence
> - $4,000,000 General Aggregate
> - $2,000,000 Products/Completed Operations
> - $1,000,000 Personal & Advertising Injury
> - $100,000 Fire Damage
> - $10,000 Medical Payments
>
> **Coverage should include:**
>
> - Per Project Aggregate
> - Waiver of Subrogation
> - Blanket Contractual Liability
> - Primary and Non-Contributing
> - Additional Insured's [sic] – under form CG 20 10 10/01 or 2037 10/01

- Independent Contractors

***

**Umbrella / Excess Liability Limit**
- $5,000,000 Each Occurrence / Aggregate

22. On April 23, 2026, Westfield sent Macon's counsel a reservation of rights letter acknowledging Macon's tender and informing Macon that Mid-States' insurance policies issued by Westfield did not provide Macon with any coverage because the claim did not involve any property damage arising out of Mid-States' work performed pursuant to the subcontractor agreement between Mid-States and Macon, and because no "suit" had been filed that would trigger a duty to defend.

23. On April 24, 2026, Macon sent Westfield copies of Campbell's above-described demand for arbitration and request for mediation and renewed its tender for defense and indemnification, arguing that Mid-States' scope of work included the garage defects alleged in Campbell's statement of claim.

24. On September 4, 2026, Westfield sent Macon's counsel a letter denying its tender on the basis that Macon is not covered under the additional insured endorsements included within the Westfield policies because Campbell's statement of claim does not allege any property damage arising out of Mid-States' work performed pursuant to the subcontractor agreement.

## The Westfield Policies

25. Westfield issued to Mid-States five commercial package policies, policy no. CMM 7884932, each effective for a one-year period during an overall period of October 10, 2021, through October 10, 2026 ("the Westfield policies"). True and correct copies of

the Westfield policies are attached hereto as **Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F**, and **Exhibit G**.

26. The Westfield policies list Mid-States as one of the named insureds on the declarations pages. The material provisions of the policies are as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of *** "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for *** "property damage" to which this insurance does not apply.***

**b.** This insurance applies to *** "property damage" only if:

(1) The *** "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

(2) The *** "property damage" occurs during the policy period;***

***

**SECTION V - DEFINITIONS**

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting

loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.***

**18.** "Suit" means a civil proceeding in which damage because of *** "property damage" *** to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**22.** "Your work":
**a.** Means:

**(1)** Work or operations performed by you or on your behalf and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; ***

***

**BLANKET ADDITIONAL INSURED – AUTOMATIC STATUS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) required by written contract or written agreement to be added as an additional insured on this coverage part and has not been added as an additional

insured for the same project by scheduled endorsement under this coverage part is an insured, but only with respect to such person(s') [sic] or organization(s') [sic] liability for:

A. Bodily injury, property damage, or personal and advertising injury caused in whole or in part by the acts or omissions by or on behalf of the named insured and in the performance of such named insured's ongoing operations as specified in such written contract or written agreement; or

B. Bodily injury or property damage caused in whole or in part by your work and included in the products-completed operations hazard, and only if

  A. The written contract or written agreement requires the named insured to provide the additional insured such coverage; and

  B. This coverage part provides such coverage.

Or:

Bodily injury, property damage, or personal and advertising injury arising out of your work described in such written contract or written agreement, but only if:

A. This coverage part provides coverage for bodily injury or property damage included within the products completed operations hazard; and

B. The written contract or agreement specifically requires the named insured to provide additional insured coverage under the 10/01 edition; 07/04 edition; or 04/13 edition of the CG2010 or the CG2037.

***

**COMMERCIAL GENERAL LIABILITY MANUFACTURERS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

***

Under **SECTION II - WHO IS AN INSURED** the following is added:

**WHO IS AN INSURED (SECTION II)** is amended to include as an insured any person or organization (defined as Additional Insured – Your Work) described below whom you are required to add as an additional insured on the policy under a written contract or agreement but the written contract or agreement must be:

**a.** Currently in effect or becoming effective during the term of this policy; and

**b.** Executed prior to the "bodily injury," "property damage" or "personal injury and advertising injury," but only the following person or organization is an additional insured under this endorsement and coverage provided to such additional insured is limited and defined below:

**Additional Insured – "Your Work"** means:

That person or organization for whom you do work is an additional insured for liability due to your sole negligence and specifically resulting from "your work" for the additional insured which is the subject of the written contract or written agreement.

***

**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of *** "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such *** "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance have been exhausted. *** However, we will have no duty to defend the insured against any "suit" seeking damages for *** "property damage" to

which this insurance does not apply.***

**c.** This insurance applies to *** "property damage" only if:

**(1)** The *** "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

**(2)** The *** "property damage" occurs during the policy period;***

***

**SECTION II – WHO IS AN INSURED**

***

**2.** Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

Subject to Section **III** – Limits Of Insurance, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**a.** Required by the contract or agreement, less any amounts payable by any "underlying insurance"; or

**b.** Available under the applicable Limits of Insurance shown in the Declarations;

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance."

***

**SECTION V - DEFINITIONS**

**24.** "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

***

27. There may be other material provisions in the Westfield policies and Westfield reserves the right to plead them in the future.

## Coverage Allegations

**COUNT I**
**No Duty to Defend or Indemnify Macon under the Westfield policies with respect to Campbell's arbitration claim**

28. Westfield restates and incorporates the allegations in paragraphs 1 through 27, as if set forth fully herein.

29. The Westfield policies' commercial general liability ("CGL") coverage parts contain a "Blanket Additional Insured – Automatic Status" endorsement, form AC-132 (1-90), that adds an organization as an additional insured if it is required by written contract or written agreement to be added as an additional insured on the CGL coverage part.

30. The subcontractor agreement between Mid-States and Macon contains language, set forth above, that requires Mid-States to add Macon as an additional insured under its CGL coverage pursuant to form CG 20 10 10/01 or 2037 10/01.

31. Therefore, Macon qualifies as an additional insured under the policies pursuant to the Blanket Additional Insured endorsement.

32. Since the subcontractor agreement specifically required Mid-States to provide Macon with additional insured coverage under the 10/01 edition of the CG 2010 or CG 2037 endorsement forms, Macon's liability coverage under the Blanket Additional Insured endorsement is limited to "[b]odily injury, property damage, or personal and advertising injury arising out of your work described in such written contract or written agreement."

33. The term "your" refers to the policies' named insureds, including Mid-States.

34. Campbell's statement of claim alleges that Macon failed to adequately reinforce the structural brick wall bond beams and bolt the non-bearing edges of precast planks to the concrete-masonry unit bond beams.

35. Additionally, the statement of claim alleges that the structural-brick flashings were discontinuous, resulting in water infiltration in the garage.

36. Mid-States' work performed for Macon, as set forth in the subcontractor agreement, did not involve the allegedly defective conditions in the Property's garage.

37. Article 1 of the subcontractor agreement, which sets forth the scope of Mid-States' work, does not state that Mid-States' work included bolting the non-bearing edges of precast planks to concrete-masonry unit bond beams or constructing structural-brick flashings.

38. Mid-States did not build the Property's structural brick wall, bond beams or garage parapet, and did not perform the bolting of non-bearing bond beams.

39. Campbell's statement of claim does not allege property damage arising out of Mid-States' work described in the subcontractor agreement.

40. Mid-States is not named in the statement of claim, and the Owner does not allege that Mid-States performed work that caused any property damage.

41. For these reasons, Campbell's arbitration claim does not fall within the scope of the Blanket Additional Insured endorsement's additional insured coverage.

42. The CGL coverage parts of the Westfield policies also contain the commercial general liability manufacturers endorsement form CG 71 29 05 10.

43. Macon qualifies as an additional insured under the CGL manufacturers endorsement because the subcontractor agreement required Mid-States to add Macon as an additional insured on its policy.

44. The CGL manufacturers endorsement provides coverage for "liability due to your sole negligence and specifically resulting from 'your work' for the additional insured which is the subject of the written contract or written agreement."

45. This endorsement does not provide Macon with any additional insured coverage for Campbell's arbitration claim for the same reasons regarding the Blanket Additional Insured endorsement: the statement of claim does not allege any liability specifically resulting from Mid-States' work for Macon that was the subject of the subcontractor agreement.

46. Further, the statement of claim alleges that the garage defects were caused by Macon's negligence, not Mid-States'.

47. Therefore, the statement of claim does not allege any liability due to "your" (meaning Mid-States') sole negligence.

48. Because Campbell's arbitration claim does not fall within the coverage provided by either of these two additional insured endorsements, Westfield does not owe a duty to defend and indemnify Macon under the policies' CGL coverage parts with respect to Campbell's claim.

49. The Westfield policies' commercial liability umbrella coverage forms provide that "any additional insured under any policy of 'underlying insurance' will automatically be an insured under this insurance."

50. The CGL coverage parts qualify as "underlying insurance" because they are listed in the schedule of underlying insurance in the policy declarations pages.

51. Because Macon qualifies as an additional insured under the CGL coverage parts, it qualifies as an additional insured under the commercial liability umbrella coverage forms.

52. However, the commercial liability umbrella coverage forms provide that the "additional insured coverage provided by this insurance will not be broader than the coverage provided by the 'underlying insurance.'"

53. Therefore, the scope of the additional insured coverage provided to Macon under the commercial umbrella coverage forms is identical to the scope of coverage provided by the Blanket Additional Insured and CGL manufacturers endorsements.

54. Since Campbell's arbitration claim does not fall within the coverage provided by either of these two additional insured endorsements, Westfield does not owe any duty to defend and indemnify Macon under the policies' commercial umbrella liability coverage forms.

55. As a result of the foregoing, Westfield does not owe a duty to defend or indemnify Macon against Campbell's arbitration claim under the Westfield policies.

56. There may be other bases on which Westfield can properly deny coverage to Macon, and Westfield reserves the right to plead them in the future.

WHEREFORE, the plaintiff, Westfield Insurance Company, respectfully requests that this honorable court enter a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 USC 2201 *et seq*., finding and declaring that Westfield owes no duty to defend or indemnify the defendant, Macon Construction Group, Inc., under the Westfield

policies with respect to the arbitration claim filed against it on behalf of 3604 North Campbell Avenue, LLC, and for such other and further relief as the court shall deem just.

Respectfully submitted,
LINDSAY, PICKETT & POSTEL, LLC

By: /s/ *Thomas J. A. Weller*

One of the attorneys for Plaintiff,
WESTFIELD INSURANCE
COMPANY

Joseph P. Postel, ARDC # 6189515
jpostel@lpplawfirm.com
312-800-6008
Thomas J.A. Weller, ARDC # 6346528
tweller@lpplawfirm.com
312-767-0345
**Lindsay, Pickett & Postel, LLC**
200 W. Madison Street, Suite 3850
Chicago, IL 60606
Fax: (312) 629-1404